IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TERRENCE L. WILLIAMS, | * |
| Plaintiff, | * |
| v. | *   Civil Action No. GLR-20-1342 |
| AMERICAN LUMPERS SERVICES, LLC, et al., | * |
| | * |
| Defendants. | |

\*\*\*

# MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Solo Cup Operating Corporation's ("Solo")[1] Motion to Dismiss (ECF No. 18), and Defendant American Lumpers Services, LLC's ("American Lumpers") Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 19). The Motions are ripe for disposition and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant the Motions, which it construes as motions to dismiss.

---

[1] Plaintiff Terrence L. Williams named Solo in his Complaint as Dart Container Corporation ("Dart"). (ECF No. 1). Solo asserts that Williams improperly named Dart as a Defendant and that Solo was the entity to which American Lumpers assigned Williams. Williams appears to disagree, but has not otherwise moved for an entry of default against Dart or objected to Solo responding on Dart's behalf. (See Pl.'s Opp'n Solo Mot. Dismiss ["Solo Opp'n"] at 1, ECF No. 34). To the extent this remains an extant dispute, the Court need not resolve it at this time as the Complaint will be dismissed for failure to state a claim regardless. For the purposes of this Opinion, the Court will refer to the entity as Solo.

## I.    BACKGROUND

### A.    Factual Background[2]

Plaintiff Terrence L. Williams alleges that he began working for American Lumpers, a business providing freight handling and staffing services, on April 29, 2019. (Compl. ¶¶ 1–2, ECF No. 1). American Lumpers assigned Williams to work for Solo as a forklift driver. (Id. ¶ 3). Shortly thereafter, on May 9, 2019, Williams injured his wrist while working at Solo. (Id. ¶ 4). Williams does not provide additional detail regarding the nature or severity of his injury except to say that: (a) it "is a physical impairment within the meaning of" Md. Code Ann., State Gov't ("SG") § 20-601(b); and (b) it "limited one or more of Plaintiff's major life activities, within the meaning of" Md. Code Regs. ("COMAR") 14.03.02.02(B)(6)(b), "such as, but not limited to, performing manual tasks, operating a forklift, working and driving a vehicle." (Compl. ¶ 12).

The day after his injury, Williams' physician restricted him to light duty work, rendering Williams unable to operate the forklift. (Id. ¶ 5). Although Williams does not detail his efforts to notify Defendants of his condition or request an accommodation, he asserts that an unspecified Defendant "failed to engage [him] in an interactive process to arrive at a reasonable accommodation." (Id. ¶ 19). Williams asserts that if the unspecified Defendant had engaged in an interactive process, they could have agreed on a reasonable

---

[2] Unless otherwise noted, the Court takes the following facts from Williams' Amended Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted). Because the Court will review Defendants' Motions under Rule 12(b)(6), the Court will not consider the affidavit Williams improperly enclosed with his Opposition to American Lumpers' Motion.

accommodation, "such as, but not limited to light duty work and/or medical leave to care for his injure[d] wrist." (Id. ¶ 20). On May 16, 2019, Williams filed a claim with the Maryland Workers' Compensation Commission. (Id. ¶ 6). Williams does not provide information regarding any steps he took to notify Defendants of this action. The following day, Defendants denied Williams' request for light duty and terminated his employment. (Id. ¶ 7). Williams does not explain who denied his request, who discharged him, or the reasons provided for his discharge.

**B.     Procedural History**

Williams filed charges against American Lumpers and Solo with the Equal Employment Opportunity Commission ("EEOC") on July 31, 2019. (Id. ¶¶ 8–9). On March 10, 2020, Williams filed this lawsuit against Defendants. (ECF No. 1). The four-count Complaint alleges: Disability Discrimination in Violation of SG § 20-606 (Count 1); Failure to Accommodate Plaintiff's Disability in Violation of SG § 20-606 (Count 2); Defendant's[3] Failure to Engage the Plaintiff in an Interactive Process (Count 3); and Wrongful Termination (Count 4). (Id. ¶¶ 11–26). Williams seeks reinstatement, compensatory damages, including damages for lost wages and emotional distress, punitive damages, attorneys' fees and costs, and prejudgment interest. (Id. ¶¶ 14, 17, 22, 26).

On August 28, 2020, Solo filed a Motion to Dismiss (ECF No. 18), and American Lumpers filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 19). On September 22, 2020, Williams filed Oppositions to both Motions. (ECF

---

[3] Although Williams appears to refer to just one Defendant in this count, he does not clarify the specific Defendant to which he refers.

Nos. 32, 34). On September 30, 2020, American Lumpers filed a Reply in support of its Motion. (ECF No. 36). Solo filed its Reply on October 16, 2020. (ECF No. 39).

## II. DISCUSSION

### A. Standard of Review

#### 1. Conversion

American Lumpers styles its Motion as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d). See Pevia v. Hogan, 443 F.Supp.3d 612, 625 (D.Md. 2020) (citation omitted). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004 & Supp. 2012)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters

4

outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005) (citing Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998)). The Court "does not have an obligation to notify parties of the obvious." Laughlin, 149 F.3d at 261.

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To successfully raise the need for additional discovery, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011) (citation omitted). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 954 (4th Cir. 1995)).

The Fourth Circuit has warned that it "'place[s] great weight on the Rule 56[d] affidavit' and that 'a reference to Rule 56[d] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[d] affidavit.'" Harrods, 302 F.3d at 244 (quoting Evans, 80 F.3d at 961). Failing to file a Rule 56(d) affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Id. (quoting Evans, 80 F.3d at 961). Despite these holdings, the Fourth Circuit has indicated that there are some limited circumstances in which summary judgment may be premature, notwithstanding the non-movants' failure to file a Rule 56(d) affidavit. See id. A court may excuse the failure to file a Rule 56(d) affidavit when "fact-intensive issues, such as intent, are involved" and the nonmovant's objections to deciding summary judgment without discovery "serve[ ] as the functional equivalent of an affidavit." Id. at 244–45 (quoting First Chi. Int'l v. United Exch. Co., 836 F.2d 1375, 1380–81 (D.C.Cir. 1988)).

Here, the Court in its discretion will decline to convert American Lumpers' Motion to a motion for summary judgment. While Williams failed to file a Rule 56(d) affidavit, he repeatedly states in his Opposition that "[a]lthough Defendant has styled its motion as a motion for summary judgment, the Court should disregard that request because the Plaintiff has not had the benefit of discovery." (Pl.'s Resp. Opp'n Def. Am. Lumpers' Mot. Dismiss Alt. Summ. J. ["Am. Lumpers Opp'n"] at 5, ECF No. 32; see also id. at 14 n.3, 15). Accordingly, the Court will not consider documents outside of Williams' Complaint in resolving American Lumpers' Motion and will treat the Motion as one to dismiss under Rule 12(b)(6).

6

### 2. Rule 12(b)(6)

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999) (citation omitted)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept

unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B.     Analysis**

####    1.     Disability Discrimination (Count 1)

A plaintiff must allege facts establishing the following to make out a prima facie case for disability discrimination: "(1) that she has a disability, (2) that she is a 'qualified individual' for employment in question, and (3) that her employer discharged her or took other adverse employment action because of her disability." Lacasse v. Didlake, Inc., 712 F.App'x 231, 238–39 (4th Cir. 2018) (citing Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 572 (4th Cir. 2015)).[4] Defendants advance several arguments for why Williams' disability discrimination claim must fail: (1) Williams does not allege a qualifying disability; (2) Williams does not allege that he was a qualified individual for the

---

[4] Although Williams asserts his claims under the Maryland Fair Employment Practices Act ("MFEPA"), SG § 20-601 et seq., the Court may rely on decisions analyzing claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., in evaluating the viability of his claims. See Bales v. Md. Judiciary/Admin. Office of the Cts., No. JFM-15-3293, 2016 WL 6879902, at *7 (D.Md. Nov. 22, 2016) (finding that § 20-606 "in its current form, authorizes the same expansive relief and recovery of damages as provided under the ADA and provides specific legal protections that mirror ADA protections"); see also Mass Transit Admin. v. Md. Comm'n on Human Relations, 515 A.2d 781, 787 (Md.Ct.Spec.App. 1986) ("[T]his court has looked to cases interpreting the federal statute for guidance in interpreting the Maryland Act.") (citing B & O R. Co. v. Bowen, 482 A.2d 921, 928 (Md.Ct.Spec.App. 1984)). The Court may also look to cases brought under the Rehabilitation Act, 29 U.S.C. § 701, because "[t]he scope of liability under the ADA is generally the same as that under the Rehabilitation Act" and "[t]he ADA and Rehabilitation Act generally are construed to impose the same requirements due to the similarity of the language of the two acts." Wood v. Md. Dep't of Transp., 732 F.App'x 177, 181–82 (4th Cir. 2018) (citations omitted).

purposes of SG § 20-606; and (3) Williams does not allege discriminatory intent. At bottom, the Court agrees with Defendants and will dismiss Count 1 for failure to state a claim.

### i. Williams does not allege a qualifying disability.

Under MFEPA, a qualifying disability is defined as a "physical or mental impairment . . . that is caused by bodily injury, birth defect, or illness, which substantially limits one or more of an individual's major life activities." COMAR 14.03.02.02(B)(6)(b). A "major life activity" "includes, but is not limited to, functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, working, driving a vehicle, socializing, and engaging in procreation and recreation." Id. (B)(7).

Here, Williams alleges only that he had an injury to his wrist that constituted a physical impairment within the meaning of MFEPA and that the impairment limited his major life activities, including "manual tasks, operating a forklift, working and driving a vehicle." (Compl. ¶ 12). As Defendants note, Williams has failed to provide any detail regarding the specific nature of the injury, the severity of the injury, or the expected duration of the injury. Similarly, Williams provides no facts to support his assertion regarding the major life activities his injury purportedly limited. Williams' bald references to the statutory language are precisely the sort of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that the Supreme Court has held are insufficient to survive a motion to dismiss. See Ashcroft, 556 U.S. at 678.

In his Opposition to American Lumpers' Motion, and through a declaration attached thereto, Williams provides a host of additional allegations concerning the nature of his

injury. (See Am. Lumpers Opp'n at 2; Williams Aff. ¶¶ 4–7, ECF No. 32-1). Williams also attaches to his Opposition the results of an independent medical examination he obtained following his injury. (ECF No. 32-2). In accordance with Williams' repeated requests, however, the Court is reviewing Defendants' Motions under a Rule 12(b)(6) standard and will not consider extra-pleading material in its analysis. Moreover, courts do not permit plaintiffs to revise their pleadings through their briefs. See Zachair, Ltd. v. Driggs, 965 F.Supp. 741, 748 n.4 (D.Md. 1997) ("[Plaintiff] is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint."), aff'd, 141 F.3d 1162 (4th Cir. 1998).

If, upon receiving American Lumpers' Motion, Williams wished to support his Complaint with additional allegations, he could have amended his Complaint as a matter of course. See Fed.R.Civ.P. 15(a)(1)(B). He declined to do so. Accordingly, the Court is compelled to evaluate whether the allegations in the Complaint are sufficient to state a claim for which relief may be granted. As set forth above, the Complaint does not contain sufficient factual allegations to support that Williams had a qualifying disability during the relevant period.

### ii. Williams does not allege that he was a qualified individual.

In order to establish a prima facie case of disability discrimination, Williams must plead that he was a "qualified individual" for the job in question. Lacasse, 712 F.App'x at 238–39. A "qualified individual with a disability" is defined as "an individual with a disability who: (a) With or without reasonable accommodation can perform the essential functions of the job in question; or (b) Is otherwise qualified for the benefit, term, condition,

or privilege of employment at issue." COMAR 14.03.02.02(B)(10). Thus, to resolve whether a person is a qualified individual, a court must consider whether that person is able to perform the essential functions of the job in question, and if not, whether the person could do the job with reasonable accommodation. Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal., 31 F.3d 209, 213 (4th Cir. 1994) (citing Chandler v. City of Dallas, 2 F.3d 1385, 1393–94 (5th Cir. 1993)).

Defendants argue that the Complaint is devoid of any allegations supporting Williams' assertion that he was a qualified individual. The Court agrees. Indeed, the Complaint lacks "even a cursory description of what kind of work the Plaintiff does." Rubino v. New Acton Mobile Indus., LLC, 44 F.Supp.3d 616, 623 (D.Md. 2014). Only persons who are qualified for the job in question are protected under the ADA. See Wells v. BAE Sys. Norfolk Ship Repair, 483 F.Supp.2d 497, 506 (E.D.Va. 2007) (citing EEOC v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 379 (4th Cir. 2000)). In the absence of any factual allegations concerning Williams' qualifications for the job, with or without a reasonable accommodation, the Court is compelled to conclude that Williams has not satisfied this element of his prima facie case.

### iii. Williams does not allege discriminatory intent.

To establish his prima facie case of disability discrimination, Williams must allege that Defendants took an adverse employment action against him "because of [his] disability." Lacasse, 712 F.App'x at 238–39. A disparate treatment disability discrimination claim, such as the one advanced by Williams, "requires proof of discriminatory intent." Withers v. Johnson, 763 F.3d 998, 1003 (8th Cir.

11

2014). Defendants argue that Williams has failed to support this element of his disability discrimination claim with any non-conclusory factual allegations. The Court agrees.

Williams alleges that he injured his wrist while working for Solo; that his physician limited him to light duty work; and that he filed a workers' compensation claim. He does not allege that he notified Defendants of any of these actions. He alleges that he was subsequently fired, but does not allege that Defendants terminated his employment because of his injury or because he filed a workers' compensation claim. In his Opposition to American Lumpers' Motion, Williams states that American Lumpers terminated him "after he advise[d] his supervisor that he ha[d] filed a Workers Compensation claim for the resulting injury," and that his supervisor then told him "that he no longer has a job." (Am. Lumpers Opp'n at 13). But these are novel allegations made for the first time in Williams' Opposition. Once again, Williams "is bound by the allegations contained in [his] complaint and cannot, through the use of motion briefs, amend the complaint." Zachair, Ltd., 965 F.Supp. at 748 n.4.

An employer's "decision not to provide [an] accommodation does not in and of itself support an inference of discriminatory intent." E.E.O.C. v. Mfrs. & Traders Tr. Co., 402 F.Supp.3d 201, 235 n.15 (D.Md.), revised and superseded on other grounds, 429 F.Supp.3d 89 (D.Md. 2019). The threadbare allegations contained in the Complaint are insufficient for this Court to draw an inference of discriminatory intent. Accordingly, the Court finds that Williams has failed to satisfy this element of his prima facie case. Because Williams

has failed to satisfy any of the elements of a prima facie case of disability discrimination, the Court will dismiss this count.[5]

### 2.     **Failure to Accommodate (Count 2)**

To establish a prima facie case for failure to accommodate, a plaintiff must show: "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations." Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013) (quoting Rhoads v. Fed. Deposit Ins. Corp., 257 F.3d 373, 387 n.11 (4th Cir. 2001)).

As set forth above, Williams fails to allege that he had a qualifying disability and fails to allege that he put Defendants on notice of that disability. Accordingly, Williams fails to state a claim for failure to accommodate and this claim must be dismissed.

---

[5] The Court further notes that Williams repeatedly fails to specify the Defendant—let alone the specific individual employee—who was responsible for the alleged discrimination against him. (See, e.g., Compl. ¶ 7 ("Defendants denied Plaintiff's request for light duty and terminated the Plaintiff[.]"); id. ¶ 14 ("As a result of Defendants' failure to accommodate the Plaintiff's disability, and unlawful termination, the Plaintiff has been damaged as aforesaid.")). Indeed, in some cases Williams appears to refer to a particular Defendant, but fails to specify which one. (See id. ¶ 16 ("Defendant's failure to grant the Plaintiff light duty and/ or medical leave to care for his injured wrist while it heals, constitutes a failure to accommodate Plaintiff's disability[.]"); id. ¶ 19 ("Defendant failed to engage the Plaintiff in an interactive process to arrive at a reasonable accommodation.")). Courts in this district have routinely dismissed multi-defendant lawsuits that fail to specify which allegations refer to which defendant. See Proctor v. Wells Fargo Bank, N.A., 289 F.Supp.3d 676, 691 (D.Md. 2018) (citing cases). Even if the Court were to otherwise find that Williams had stated a claim, it would dismiss on this basis.

13

### 3. Failure to Engage in an Interactive Process (Count 3)

Defendants argue that Count 3 of Williams' Complaint must fail because a failure to engage in an interactive process is not an independent cause of action, but rather an element of proof in support of a claim that an employer failed to accommodate an employee's disability. Defendants are correct. See Dressel v. Safeway, Inc., No. ELH-19-1556, 2020 WL 5880860, at *7 (D.Md. Oct. 2, 2020) (citing cases). Accordingly, the Court will dismiss Count 3 of the Complaint for failure to state a claim upon which relief may be granted.

### 4. Wrongful Termination (Count 4)

In order to plead a common law wrongful discharge claim in Maryland, "a plaintiff must [allege] that (1) the employee was discharged; (2) the alleged basis for discharge violated some clear mandate of public policy; and (3) there is a nexus between the employee's conduct and the decision to fire the employee." Marshall v. Univ. of Md. Med. Ctr., No. TDC-17-2779, 2020 WL 5106788, at *10 (D.Md. Aug. 31, 2020) (citing Wholey v. Sears Roebuck, 803 A.2d 482, 489 (Md. 2002)). Maryland courts have further held that "[d]ischarging an employee solely because that employee filed a worker's compensation claim contravenes the clear mandate of Maryland public policy." Ewing v. Koppers Co., 537 A.2d 1173, 1175 (Md. 1988)

Here, Williams has alleged that he was terminated and that his discharge violates "a clear mandate of public policy, set forth in Maryland Labor & Employment Article, § 9-1105 which prohibits an employer from terminating an employee who files a Workers Compensation Claim." (Compl. ¶ 24). Defendants argue, however, that Williams has failed

14

to adequately allege causation—i.e., the nexus between his filing a workers' compensation claim and his termination. At bottom, the Court agrees and will dismiss this count.

Defendants first argue that Williams "fails to allege that he was discharged solely and directly because he filed a WC claim," explaining that Williams cannot possibly do so because "he previously alleged in his [EEOC] Charge of Discrimination, that he was terminated in retaliation 'due to [his] disability,' rather than as a result of his filing a WC claim." (Mem. Law Supp. Mot. Dismiss Alt. Summ. J. ["Am. Lumpers Mem."] at 18, ECF No. 20-1). The Court disagrees. It is well established that plaintiffs "may set out 2 or more statements of a claim . . . alternatively or hypothetically," and a party may "state as many separate claims . . . as it has, regardless of consistency." Fed.R.Civ.P. 8(d).

American Lumpers attempts to circumvent the spirit of Rule 8(d) by noting that it is not only Williams' Complaint that is inconsistent, but that his EEOC Charge constitutes irrevocable testimonial evidence contradicting his allegation that his discharge occurred because he filed a workers' compensation claim. However, in one of the cases cited by American Lumpers, Muench v. Alliant Foodservice, Inc., 205 F.Supp.2d 498 (D.Md. 2002), the plaintiff asserted a wrongful termination count premised on filing a workers' compensation claim and an ADA claim. Id. at 501. Although the plaintiff in Muench would undoubtedly have filed an EEOC charge alleging that he was terminated due to his disability, the Court did not dismiss the workers' compensation claim on that basis. See id. at 504–06. Indeed, American Lumpers points the Court to no previous decisions in this or any other court that have so found.

15

Because Williams' EEOC Charge is an administrative complaint and a necessary prerequisite to filing a disability discrimination claim in this Court, it functionally serves as an alternate pleading. The Court declines to restrict Williams' ability to plead in the alternative on the basis of the requirement that he administratively exhaust his alternate claim. Accordingly, the Court will not dismiss Williams' wrongful termination claim on this basis.[6]

As with the previous counts, however, the Complaint lacks the necessary detail to state a claim for which relief may be granted. Specifically, Williams does not allege that either Defendant was aware of his workers' compensation claim at the time it or they terminated his employment. See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) ("Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case."); Moore v. Balt. City Bd. of Sch. Comm'rs, No. SAG-19-00154, 2020 WL 7027453, at *5 (D.Md. Nov. 30, 2020) ("[Plaintiff] has failed to provide the requisite specifics—in terms of dates, demographic details, and the knowledge of relevant decisionmakers—to establish a question of material fact as to retaliation.").

---

[6] The Court also declines to enter judgment for Defendants on the basis of the evidence American Lumpers attaches to its Motion indicating that Williams was not terminated. (See Am. Lumpers Mem. at 18–19; Montgomery Aff., ECF No. 19-3). As discussed above, the Court is reviewing Defendants' Motions under Rule 12(b)(6) and will not consider extra-pleading materials. Similarly, the Court declines to consider the additional allegations relating to this count contained in the affidavit Williams attaches to his Opposition. (See Am. Lumpers Opp'n at 14; Williams Aff. ¶¶ 8–9).

Similarly, it is entirely unclear from the face of the Complaint whether either or both Defendants made the decision to terminate Williams. (See Compl. ¶ 7 ("Defendants . . . terminated the Plaintiff on May 17, 2019.")); see also Proctor v. Wells Fargo Bank, N.A., 289 F.Supp.3d 676, 691 (D.Md. 2018) (dismissing lawsuit on the basis that it failed to specify which allegations were directed at which defendant). The net result of these deficiencies is a Complaint that is "so devoid in factual allegations that it fails to put the defendant[s] on notice of the claims being asserted against [them] and fails to state a plausible claim for relief." Miller v. Montgomery Cnty. Pub. Sch., No. TJS-19-3067, 2020 WL 2097686, at *2 (D.Md. May 1, 2020). Accordingly, the Court will dismiss Count 4.

### III.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motions to Dismiss Amended Complaint (ECF Nos. 18, 19). A separate Order follows.

Entered this 22nd day of March, 2021.

/s/
George L. Russell, III
United States District Judge
