IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TERRENCE L. WILLIAMS,                    *

     Plaintiff,                         *

v.                                       *         Civil Action No. GLR-20-1342

AMERICAN LUMPERS SERVICES,               *
LLC, et al.,
                                         *
     Defendants.

*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff Terrence L. Williams' Motion for Reconsideration or, in the Alternative, Motion to Amend Judgment Pursuant to Federal Rule 59(e), or in the Alternative, Motion, Pursuant to Federal Rule 60(b), for Relief from Judgment ("Motion to Reconsider") (ECF No. 48), and Williams' Motion for Leave to Amend Complaint ("Motion to Amend") (ECF No. 50). The Motions are ripe for disposition and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons outlined below, the Court will grant the Motions.

## I.   BACKGROUND

### A.   Factual Background

The facts alleged by Williams in his original Complaint are set forth in the Court's March 22, 2021 Memorandum Opinion (ECF No. 46) (the "Initial Opinion"). Because the allegations contained in Williams' original Complaint were scant, the Court will reproduce that summary here:

Plaintiff Terrence L. Williams alleges that he began working for [Defendant American Lumpers Services, LLC ("American Lumpers")], a business providing freight handling and staffing services, on April 29, 2019. (Compl. ¶¶ 1–2, ECF No. 1). American Lumpers assigned Williams to work for [Solo Cup Operating Corporation ("Solo")][1] as a forklift driver. (Id. ¶ 3). Shortly thereafter, on May 9, 2019, Williams injured his wrist while working at Solo. (Id. ¶ 4). Williams does not provide additional detail regarding the nature or severity of his injury except to say that: (a) it "is a physical impairment within the meaning of" Md. Code Ann., State Gov't ("SG") § 20-601(b); and (b) it "limited one or more of Plaintiff's major life activities, within the meaning of" Md. Code Regs. ("COMAR") 14.03.02.02(B)(6)(b), "such as, but not limited to, performing manual tasks, operating a forklift, working and driving a vehicle." (Compl. ¶ 12).

The day after his injury, Williams' physician restricted him to light duty work, rendering Williams unable to operate the forklift. (Id. ¶ 5). Although Williams does not detail his efforts to notify Defendants of his condition or request an accommodation, he asserts that an unspecified Defendant "failed to engage [him] in an interactive process to arrive at a reasonable accommodation." (Id. ¶ 19). Williams asserts that if the unspecified Defendant had engaged in an interactive process, they could have agreed on a reasonable accommodation, "such as, but not limited to light duty work and/or medical leave to care for his injure[d] wrist." (Id. ¶ 20). On May 16, 2019, Williams filed a claim with the Maryland Workers' Compensation Commission. (Id. ¶ 6). Williams does not provide information regarding any steps he took to notify Defendants of this action. The following day, Defendants denied Williams' request for light duty and terminated his employment. (Id. ¶ 7). Williams does not explain who denied his request, who discharged him, or the reasons provided for his discharge.

(Mar. 22, 2021 Mem. Op. at 2–3, ECF No. 46).

---

[1] The Court will direct the Clerk to update the docket to reflect that the Defendant mistakenly identified as Dart Container Corporation is properly named Solo Cup Operating Corporation.

In his proposed Amended Complaint (ECF No. 50-2), Williams adds several new allegations. First, Williams offers additional information concerning the nature and severity of his alleged disability. Williams avers that the day after his injury, he went to the hospital and was diagnosed with a left wrist sprain. (Proposed Am. Compl. ["Am. Compl."] ¶ 6, ECF No. 50-2). Williams states that his doctors recommended he take two days off work and restrict himself to light duty. (Id.). Williams further alleges that the injury "prevented [him] from working as a Forklift Operator" because he was "unable to turn the steering wheel of the forklift," a requirement of the job. (Id. ¶ 7). On May 21, 2019, Williams received a diagnosis of an injury to his triangular fibrocartilage complex, which is "made of several ligaments and tendons" around the wrist and forearm and "helps the wrist move and stabilizes the forearm bones." (Id. ¶ 21). The condition made it "painful for [Williams] to use his wrist in the operation of the [forklift] and other physical activities." (Id. ¶ 22). Williams "requires surgery to repair the injury." (Id. ¶ 23).

Williams also provided additional detail regarding the manner in which he placed Defendants on notice of his disability and requested an accommodation. Williams states that after he left the hospital, he provided a receptionist at Solo with a physician's note outlining his work restrictions and asked the receptionist about light duty. (Id. ¶ 8). The receptionist responded that she "would have Steve Shulman call him, but she was sure there would be no light duty and [Williams] could not return to work until he fully recovered." (Id.). Williams alleges that Mr. Shulman never called him and that Solo otherwise failed to respond to his request for light duty. (Id. ¶¶ 8–9).

Williams further alleges that on May 21, 2019, he contacted an individual at American Lumpers named Amparo Brazoban to ask about returning to work and about whether American Lumpers could accommodate his restriction to light duty. (Id. ¶ 14). The next day, Brazoban emailed Williams back to inform him that "there was no light duty." (Id. ¶ 15). This was American Lumpers' only response to Williams' request for an accommodation. (Id. ¶ 17–19). No one from American Lumpers contacted Williams again about returning to work in any capacity. (Id. ¶ 16).

Williams also adds allegations concerning when and how he notified American Lumpers of his workers' compensation claim. Williams states that on May 17, 2019, he spoke with his supervisor at American Lumpers, Jason Montgomery, and informed him that he had filed a workers' compensation claim. (Id. ¶ 13). After asking Williams a series of questions, Montgomery told Williams that Williams "no longer worked for American Lumpers." (Id.). Williams viewed this as a termination of his employment. (Id. ¶ 20).

**B.** **Procedural History**

Williams filed charges against American Lumpers and Solo with the Equal Employment Opportunity Commission ("EEOC") on July 31, 2019. (Id. ¶¶ 24–25). On March 30, 2020, Williams filed this lawsuit against Defendants in the Circuit Court for Howard County. (ECF No. 2). Solo removed the action to this Court on May 29, 2020. (ECF No. 1). On August 28, 2020, Solo filed a Motion to Dismiss (ECF No. 18), and American Lumpers filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 19). Following briefing by the parties, the Court granted Defendants' Motions on March 22, 2021, and dismissed the Complaint. (ECF Nos. 46, 47).

On April 1, 2021, Williams filed a Motion for Reconsideration or, in the Alternative, Motion to Amend Judgment Pursuant to Federal Rule 59(e), or in the Alternative, Motion, Pursuant to Federal Rule 60(b), for Relief from Judgment. (ECF No. 48). On April 8, 2021, the Court directed Williams to separately file a motion for leave to amend in accordance with the Local Rules of this Court. (ECF No. 49). Williams filed a Motion for Leave to Amend Complaint on April 29, 2021. (ECF No. 50).

Williams' proposed five-count Amended Complaint alleges: Disability Discrimination by Solo in Violation of SG § 20-606 (Count 1); Failure to Accommodate Plaintiff's Disability by Solo in Violation of SG § 20-606 (Count 2); Violation of SG § 20-606 by American Lumpers (Count 3); Failure to Accommodate Plaintiff's Disability by American Lumpers in Violation of SG § 20-606 (Count 4); and Wrongful Discharge by American Lumpers (Count 5). (Am. Compl. ¶¶ 28–56). Williams seeks payment of past and future lost wages, compensatory damages, punitive damages, attorneys' fees and costs, and prejudgment interest. (Id. ¶¶ 35, 38, 46, 49, 56).

American Lumpers filed Oppositions to both Motions on May 12, 2021. (ECF Nos. 53, 54). Solo filed one Opposition to both Motions on May 20, 2021. (ECF No. 55). Williams filed Replies to all three Oppositions on June 3, 2021. (ECF Nos. 58, 59, 60).

## II.    DISCUSSION

### A.    <u>Standard of Review</u>

Although two Motions are pending before the Court, the Court need only concern itself with Williams' Motion to Amend. As the United States Court of Appeals for the Fourth Circuit recognized in <u>Laber v. Harvey</u>, 438 F.3d 404 (4th Cir. 2006), and more

recently in <u>Katyle v. Penn National Gaming, Inc.</u>, 637 F.3d 462, 470–71 (4th Cir. 2011), <u>cert. denied</u>, 132 S.Ct. 115 (2011), the only distinction between a pre- and a post-judgment motion to amend is that the district court may not grant the post-judgment motion unless the judgment is vacated pursuant to Federal Rules of Civil Procedure 59(e) or 60(b). <u>See</u> <u>Katyle</u>, 637 F.3d at 470; <u>Laber</u>, 438 F.3d at 427. "To determine whether vacatur is warranted, however, the court need not concern itself with either of those rules' legal standards." <u>Katyle</u>, 637 F.3d at 471. Rather, "[t]he court need only ask whether the amendment should be granted, just as it would on a prejudgment motion to amend pursuant to [Rule] 15(a)." <u>Id.</u>

Under Rule 15(a), "[t]he court should freely give leave [to amend a complaint] when justice so requires." Fed.R.Civ.P. 15(a)(2). "This directive gives effect to the federal policy in favor of resolving cases on the merits instead of disposing of them on technicalities." <u>Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.</u>, 674 F.3d 369, 379 (4th Cir. 2012) (quoting <u>Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.</u>, 576 F.3d 172, 193 (4th Cir. 2009)). The decision to grant leave to amend lies within the discretion of the district court. <u>Medigen of Ky., Inc. v. Pub. Serv. Comm'n of W.Va.</u>, 985 F.2d 164, 167 (4th Cir. 1993). Leave to amend is properly denied when amendment would prejudice the opposing party, the moving party has exhibited bad faith, or amendment would be futile. <u>Edell & Assocs., P.C. v. Law Offs. of Peter G. Angelos</u>, 264 F.3d 424, 446 (4th Cir. 2001) (citing <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 242 (4th Cir. 1999)).

Leave to amend is futile when an amended complaint could not survive a motion to dismiss for failure to state a claim. <u>See</u> <u>United States ex rel. Wilson v. Kellogg Brown &</u>

6

Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

**B.    Analysis**

**1.    Bad Faith**

Defendants argue that Williams displayed bad faith by failing to amend the Complaint prior to September 18, 2020, when he could have amended as a matter of course. In support of its argument, American Lumpers relies on Lay v. Caesars Enter. Servs., LLC, 2018 U.S. Dist. LEXIS 116807 (D.Md. July 12, 2018), in which this Court rejected a motion for leave to amend under similar circumstances. The facts in this case, however, are distinguishable from Lay in at least two material respects. First, Defendants were on notice of many of the allegations contained in the proposed Amended Complaint as early

as September 22, 2020, when Williams attached an affidavit to his Opposition to Solo's Motion to Dismiss containing a large portion of the novel allegations now contained in his Amended Complaint. (See ECF No. 34-1). This was not the case in Lay. Second, the proposed amended complaint in Lay sought to add ten defendants, several of which were unnecessarily left unnamed by the plaintiff. Lay, 2018 U.S. Dist. LEXIS 116807, at *3–5. In contrast, Williams seeks only to bolster his factual allegations against the existing Defendants.

Moreover, Williams included in his Oppositions to both Defendants' Motions a request that, if the Court decided to grant the Defendants' Motions, it instead grant him leave to amend the Complaint. Such an informal request to amend does not comport with the Federal Rules or the Local Rules of this Court. See Fed.R.Civ.P. 7(b); Local Rule 103.6 (D.Md. 2021); Hall v. JPMorgan Chase Bank, N.A., No. JKB-19-2510, 2020 WL 1452132, at *8 (D.Md. Mar. 25, 2020) ("Plaintiff did not file a motion or submit a proposed amended complaint; he merely expressed his wish to amend in his opposition brief. The Court will deny his request as procedurally improper."). These informal requests nevertheless suggest to this Court that Williams was operating in good faith and merely failed to grasp that the original Complaint did not meet federal pleading standards. See Matrix Cap. Mgmt. Fund, 576 F.3d at 195 ("Plaintiffs' counsel's strategy of not submitting a formal motion to amend and instead arguing that the operative complaint was adequate can, of course, be questioned. Nevertheless, the strategy does not in any way amount to bad faith[.]").

"Delay alone is an insufficient reason to deny leave to amend." Edwards, 178 F.3d at 242. "Rather, the delay must be accompanied by prejudice, bad faith, or futility." Id.

Defendants argue that Williams' delay in seeking leave to amend is evidence of bad faith in and of itself. But such an argument is circular under Edwards; if delay alone could demonstrate bad faith, there would be no reason for the Fourth Circuit to require a finding a bad faith in addition to delay to justify denying leave to amend. The Court therefore declines to credit Defendants' argument.

For all these reasons, the Court disagrees with Defendants that Williams' delay in seeking leave to amend demonstrates bad faith. As Defendants have advanced no other grounds to suggest bad faith on Williams' part, the Court will not deny Williams' Motions on this basis.

### 2.    Prejudice

In determining whether an amendment is prejudicial, the Court considers the nature of the amendment and its timing. Laber, 438 F.3d at 427. The further a case has progressed, the more likely it is that amendment will be prejudicial. Mayfield, 674 F.3d at 379. "A common example of a prejudicial amendment is one that 'raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial.'" Laber, 438 F.3d at 427 (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986)).

By contrast, an amendment is not prejudicial "if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." Id. (citing Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980)); see also Kalos v. Law Offs. of Eugene A. Seidel, P.A., No. JCC-09-833, 2009 WL 4683551, at *3 (E.D.Va. Dec. 3, 2009) ("Because the trial date is not yet set and no discovery has been taken, the

Court finds that allowing leave to amend the Amended Complaint would not be unduly prejudicial to Defendants."). Additionally, an amendment is not prejudicial if the plaintiff does not add new claims or parties. See Heavener v. Quicken Loans, Inc., No. 3:12-CV-68, 2013 WL 1314563, at *3 (N.D.W.Va. Mar. 26, 2013) ("Defendants will not be prejudiced by the amendments as Plaintiff has only added more facts to support his claim—he has not alleged new claims or added new parties.").

Here, discovery has not yet begun and Williams has added no new parties or novel claims. Rather, Williams has only added detail to support his existing claims against the existing Defendants. See Matrix Cap. Mgmt. Fund, 576 F.3d at 195 (finding no prejudice where plaintiff "simply [sought] to add specificity to scienter allegations in a situation where defendants are aware of the circumstances giving rise to the action"); Edwards, 178 F.3d at 243 (noting that merely adding specificity to allegations generally does not cause prejudice to the opposing party); Davis, 615 F.2d at 613 ("Because defendant was from the outset made fully aware of the events giving rise to the action, an allowance of the amendment could not in any way prejudice the preparation of defendant's case.").

It is true that granting Williams' Motion to Amend will force Defendants to expend resources defending this action. But "the time, effort, and money . . . expended in litigating [a] case do not constitute substantial prejudice weighing against leave to amend." Best v. Newrez LLC, No. GJH-19-2331, 2020 WL 5513433, at *8 (D.Md. Sept. 11, 2020) (quoting Class Produce Group, LLC v. Harleysville Worcester Ins. Co., No. ELH-16-3431, 2017 WL 2377105, at *9 (D.Md. May 31, 2017) (internal quotation marks omitted)).

Accordingly, the Court finds that granting Williams leave to amend his Complaint will not prejudice Defendants.

### 3.    Futility

The final reason a Court may deny a motion for leave to amend is upon determining that the proposed amendment would be futile. Leave to amend is futile when an amended complaint could not survive a motion to dismiss for failure to state a claim. See Wilson, 525 F.3d at 376. Thus, this Court will review each count of the Amended Complaint to determine whether it states a claim for which relief may be granted.

### a.    Disability Discrimination by Solo (Count 1)

A plaintiff must allege facts establishing the following to make out a prima facie case for disability discrimination: "(1) that she has a disability, (2) that she is a 'qualified individual' for employment in question, and (3) that her employer discharged her or took other adverse employment action because of her disability." Lacasse v. Didlake, Inc., 712 F.App'x 231, 238–39 (4th Cir. 2018) (citing Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 572 (4th Cir. 2015)).[2] Solo advances two arguments for why Williams' Amended

---

[2] Although Williams asserts his claims under the Maryland Fair Employment Practices Act ("MFEPA"), SG § 20-601 et seq., the Court may rely on decisions analyzing claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., in evaluating the viability of his claims. See Bales v. Md. Judiciary/Admin. Off. of the Cts., No. JFM-15-3293, 2016 WL 6879902, at *7 (D.Md. Nov. 22, 2016) (finding that § 20-606 "in its current form, authorizes the same expansive relief and recovery of damages as provided under the ADA and provides specific legal protections that mirror ADA protections"); see also Mass Transit Admin. v. Md. Comm'n on Human Rels., 515 A.2d 781, 787 (Md.Ct.Spec.App. 1986) ("[T]his court has looked to cases interpreting the federal statute for guidance in interpreting the Maryland Act.") (citing B & O R.R. v. Bowen, 482 A.2d 921, 928 (Md.Ct.Spec.App. 1984)). The Court may also look to cases brought under the Rehabilitation Act, 29 U.S.C. § 701, because "[t]he scope of liability

Complaint still fails to state a claim for disability discrimination: (1) Williams does not allege that he was a qualified individual for the purposes of SG § 20-606; and (2) Williams does not adequately allege that Solo is a joint employer.[3] At bottom, the Court disagrees with Solo and will grant Williams' Motion to Amend as to Count 1 of the Amended Complaint.

### i.     Williams as Qualified Individual

In order to establish a prima facie case of disability discrimination, Williams must plead that he was a "qualified individual" for the job in question. Lacasse, 712 F.App'x at 238. A "qualified individual with a disability" is defined as "an individual with a disability who: (a) With or without reasonable accommodation can perform the essential functions of the job in question; or (b) Is otherwise qualified for the benefit, term, condition, or

---

under the ADA is generally the same as that under the Rehabilitation Act" and "[t]he ADA and Rehabilitation Act generally are construed to impose the same requirements due to the similarity of the language of the two acts." Wood v. Md. Dep't of Transp., 732 F.App'x 177, 181–82 (4th Cir. 2018).

[3] Solo also briefly argues that Williams' disability discrimination claim is subject to dismissal because Williams sought "light duty on an indeterminate basis." (Solo's Resp. Opp'n Pl.'s Mots. Reconsideration & Leave Am. Compl. at 16, ECF No. 55). Solo asserts this request was inappropriate because "[t]he ADA does not require an employer to assign an employee to permanent light duty." Shin v. Univ. of Md. Med. Sys. Corp., 369 F.App'x 472, 482 (4th Cir. 2010). This argument mischaracterizes the allegations in the Amended Complaint. In the Amended Complaint, Williams alleges that he "went to the office of [Solo] . . . provided the physician's note with the work restrictions and asked about light duty." (Am. Compl. ¶ 8). Williams does not allege a time frame over which he required to be assigned to light duty. Under MFEPA, Williams' request ought to have begun an interactive process through which Williams and Solo determined the severity and duration of Williams' disability and discussed possible accommodations. Indeed, Williams has alleged that the condition may be repaired by surgery. (Id. ¶ 23). Solo's alleged failure to begin the interactive process—and resultant lack of knowledge concerning the duration of Williams' disability—does not insulate it from liability.

privilege of employment at issue." COMAR 14.03.02.02(B)(10). Thus, to resolve whether a person is a qualified individual, a court must consider whether that person is able to perform the essential functions of the job in question, and if not, whether the person could do the job with a reasonable accommodation. Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal., 31 F.3d 209, 213 (4th Cir. 1994) (citing Chandler v. City of Dall., 2 F.3d 1385, 1393–94 (5th Cir. 1993)). Only persons who are qualified for the job in question are protected under the ADA. See Wells v. BAE Sys. Norfolk Ship Repair, 483 F.Supp.2d 497, 506 (E.D.Va. 2007) (citing EEOC v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 379 (4th Cir. 2000)).

In the Initial Opinion, the Court found that Williams had failed to satisfy this element because the original Complaint was devoid of any allegations supporting Williams' assertion that he was a qualified individual. Indeed, the original Complaint lacked "even a cursory description of what kind of work the Plaintiff does." Rubino v. New Acton Mobile Indus., LLC, 44 F.Supp.3d 616, 623 (D.Md. 2014).

In some ways, the Amended Complaint suffers from similar defects. Indeed, Williams concedes in the Amended Complaint that the disability "prevented [him] from working as a Forklift Operator" because he was "unable to turn the steering wheel of the forklift," a requirement of the job. (Am. Compl. ¶ 7). However, in the Court's view, Williams does just enough in his Amended Complaint to remedy this deficiency. The Amended Complaint details Williams' requests to Solo and American Lumpers that he be placed on light duty. (See id. ¶¶ 8, 14). Williams also alleges that neither Solo nor American Lumpers responded to his request to be placed on light duty other than to baldly state that no light duty work existed. (Id. ¶¶ 8–9, 15–19). Williams alleges that instead, Solo

terminated his employment, thereby foreclosing his ability "to obtain a reassignment to an existing job which he could perform with his disability." (Id. ¶ 33). Thus, Williams alleges that Solo decided to terminate him rather engage in the interactive process with him.

These allegations adequately allege that Williams was a qualified individual for the purposes of surviving a motion for failure to state a claim. As this Court has explained, under MFEPA, Solo was obligated to do more than just engage in the interactive process prescribed by the ADA:

> Although the MFEPA has been labeled the "Maryland State analogue to the ADA," George v. Md. Dep't of Corr. Serv., Civ. No. WMN-14-2808, 2015 WL 847416, at *4 n.5 (D.Md. Feb. 25, 2015), aff'd, No. 15-1323, 2015 WL 5236796 (4th Cir. Sept. 9, 2015) (mem.), the Court of Special Appeals of Maryland recently clarified that Maryland regulations require "an individualized assessment by the employer of the employee's abilities to perform the essential functions of a job," a process according "stronger protection for the employee than the federal 'interactive process' regulation." Adkins, 119 A.3d at 164 (emphasis added); see also Md.Code Regs. 14.03.02.04(B)(3). The court elaborated that this individualized assessment should not be "constrained to mean the job previously held by the employee"; rather, the employer must "assess the capabilities of the disabled employee to determine whether the employee is 'otherwise qualified' for a vacant position and what reasonable accommodation may be made, including reassignment." Adkins, 119 A.3d at 164.

Townes v. Md. Dep't of Juv. Servs., No. JKB-15-1093, 2015 WL 5928114, at *7 (D.Md. Oct. 8, 2015). The Townes Court thus held that it was "premature to assess at the 12(b)(6) stage whether Defendant conducted the kind of individualized assessment that Maryland law requires: that is inherently a fact question, amenable to discovery." Id.

14

Solo argues that Williams' Complaint is deficient because Williams fails to "identify his qualifications for whatever position he speculates he should have been 'reassign[ed]' to." (Solo's Resp. Opp'n Pl.'s Mots. Reconsideration & Leave Am. Compl. ["Solo Opp'n"] at 14, ECF No. 55). But by failing to comply with MFEPA by engaging with Williams regarding other positions for which he may be qualified, Solo deprived Williams of the very information it now asserts is missing from the Amended Complaint. Thus, while "the burden of proving discrimination, and thus the burden of proving that there was an appropriate vacant position, falls on the plaintiff, the Court finds that resolution of this issue . . . is best reserved for the summary judgment stage following a full opportunity for discovery." Hawkins v. W. Penn Allegheny Health Sys., No. CIV.A. 13-1334, 2014 WL 5803112, at *7 (W.D.Pa. Nov. 7, 2014) (citation omitted). Accordingly, the Court finds that Williams' Amended Complaint is not futile to the extent it seeks to allege that he was a qualified individual.

### ii.       Solo as Joint Employer

In its Opposition, Solo argues that Williams has failed to adequately allege that Solo was his employer for the purposes of MFEPA. As Williams describes, American Lumpers "provides freight handling and staffing services to businesses requiring such services." (Am. Compl. ¶ 2). Thus, American Lumpers hired Williams and assigned him to work for Solo as a forklift operator. (Id. ¶¶ 1, 3). In other words, American Lumpers "was the agent" for Solo "in the hiring and termination of [Williams]." (Id. ¶ 4). In sum, Williams appears to allege that Solo and American Lumpers were his joint employers: American Lumpers, a staffing agency, hired Williams and assigned him to work at Solo, the company that

owned and operated his actual workplace. See Butler v. Drive Auto. Indus. of Am., Inc., 793 F.3d 404, 410 (4th Cir. 2015) ("[T]he joint employment doctrine also recognizes the reality of changes in modern employment, in which increasing numbers of workers are employed by temporary staffing companies that exercise little control over their day-to-day activities."). Williams further alleges that he was injured while working at Solo, and that after he informed Solo of his disability, a Solo employee responded by telling him not to return to work. (Am. Compl. ¶ 5, 8).

Notwithstanding these apparently straightforward allegations regarding the nature of Williams' employment, Solo asserts that Williams has failed to adequately allege that it was a joint employer of Williams. Solo directs the Court's attention to a set of factors set forth in Butler "for courts in this Circuit to use in assessing whether an individual is jointly employed by two or more entities":

(1) authority to hire and fire the individual;
(2) day-to-day supervision of the individual, including employee discipline;
(3) whether the putative employer furnishes the equipment used and the place of work;
(4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes;
(5) the length of time during which the individual has worked for the putative employer;
(6) whether the putative employer provides the individual with formal or informal training;
(7) whether the individual's duties are akin to a regular employee's duties;
(8) whether the individual is assigned solely to the putative employer; and
(9) whether the individual and putative employer intended to enter into an employment relationship.

16

Butler, 793 F.3d at 414. Under the Butler test, the first three factors are the most important, while the ninth factor is "of minimal consequence," and merely forms part of the "overall fact-specific inquiry into the putative employee's circumstances." Id. at 414–15, 414 n.12.

The Court declines to follow Solo down the rabbit hole. As this Court has previously held, at the pleading stage, it is inappropriate "to conduct a detailed factor-by-factor analysis [of this issue] given that the question of joint employer status is essentially a fact-intensive issue best addressed after the parties have had an opportunity to uncover facts through discovery to support or refute the Plaintiffs' claim." Casorio-Sahin v. Pat's Select Pizza & Grill LLC, No. RDB-18-0851, 2019 WL 1171266, at *4 (D.Md. Mar. 13, 2019). Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." To require plaintiffs in this Court to anticipate and allege specific facts responsive to every possible multifactorial test that could touch on their complaints runs counter to the spirit and the text of Rule 8. Williams has alleged that he was hired by American Lumpers, a staffing agency, which assigned him to spend his days working at Solo. Shortly after he started working for Solo, he was injured on the job. After he informed Solo of his disability, it responded by telling him not to return to work. These allegations suffice, at a minimum, to satisfy the first three Butler factors for the purposes of surviving a motion to dismiss for failure to state a claim. Accordingly, the Court will not deny Williams' Motion to Amend on this basis.

### b.      Failure to Accommodate by Solo (Count 2)

To establish a prima facie case for failure to accommodate, a plaintiff must show: "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations." Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013) (quoting Rhoads v. Fed. Deposit Ins. Corp., 257 F.3d 373, 387 n.11 (4th Cir. 2001)).

The only challenge Solo makes to Williams' failure to accommodate claim, as amended, is that Williams failed to allege that he was a qualified individual, i.e., that he could perform the essential functions of the position. But as set forth in Section II.B.3.a.i, supra, the Court finds that Williams has adequately alleged this element for the purposes of surviving a motion to dismiss for failure to state a claim. Accordingly, the Court will not deny Williams' Motion to Amend on the basis that the amendments to his failure to accommodate claim against Solo are futile.

### c.      Violation of SG § 20-606 by American Lumpers (Count 3)

American Lumpers' sole basis for challenging the viability of Williams' amended disability discrimination claim is that Williams failed to allege that he was a qualified individual with a disability. But as set forth in Section II.B.3.a.i, supra, the Court finds that Williams has adequately alleged this element for the purposes of surviving a motion to dismiss for failure to state a claim. The same findings apply to his claim against American Lumpers. Accordingly, the Court will not deny Williams' Motion to Amend on the basis

that the amendments to his disability discrimination claim against American Lumpers are futile.

### d.     Failure to Accommodate by American Lumpers (Count 4)

As with Solo, the only challenge American Lumpers makes to Williams' amended failure to accommodate claim is that Williams failed to allege that he was a qualified individual, i.e., that he could perform the essential functions of the position. But as set forth in Section II.B.3.a.i, supra, the Court finds that Williams has adequately alleged this element for the purposes of surviving a motion to dismiss for failure to state a claim. Accordingly, the Court will not deny Williams' Motion to Amend on the basis that the amendments to his failure to accommodate claim against American Lumpers are futile.

### e.     Wrongful Discharge by American Lumpers (Count 5)

In order to plead a common law wrongful discharge claim in Maryland, "a plaintiff must [allege] that (1) the employee was discharged; (2) the alleged basis for discharge violated some clear mandate of public policy; and (3) there is a nexus between the employee's conduct and the decision to fire the employee." Marshall v. Univ. of Md. Med. Ctr., No. TDC-17-2779, 2020 WL 5106788, at *10 (D.Md. Aug. 31, 2020) (citing Wholey v. Sears Roebuck, 803 A.2d 482, 489 (Md. 2002)). Maryland courts have further held that "[d]ischarging an employee solely because that employee filed a worker's compensation claim contravenes the clear mandate of Maryland public policy." Ewing v. Koppers Co., 537 A.2d 1173, 1175 (Md. 1988).

In the original Complaint, Williams alleged that he was terminated and that his discharge violates "a clear mandate of public policy, set forth in Maryland Labor &

19

Employment Article, § 9-1105 which prohibits an employer from terminating an employee who files a Workers Compensation Claim." (Compl. ¶ 24). The Court dismissed the claim because Williams failed to allege that either Defendant was aware of his workers' compensation claim at the time it or they terminated his employment. The Court also noted that it was unclear in the Complaint whether either or both Defendants made the decision to terminate Williams. (See Compl. ¶ 7 ("Defendants . . . terminated the Plaintiff on May 17, 2019.")); see also Proctor v. Wells Fargo Bank, N.A., 289 F.Supp.3d 676, 691 (D.Md. 2018) (dismissing lawsuit on the basis that it failed to specify which allegations were directed at which defendant).

Williams has cured both these deficiencies in the Amended Complaint. First, Williams alleged that on May 17, 2019, he spoke with his supervisor at American Lumpers and informed him that he had filed a workers' compensation claim. (Am. Compl. ¶ 13). During that same conversation, after asking Williams a series of questions, Williams' supervisor told him that Williams "no longer worked for American Lumpers." (Id.). American Lumpers nevertheless argues that Williams has failed to allege that he was "actually terminated." As an initial matter, the Court finds that Williams' allegation that his supervisor told him he "no longer worked for American Lumpers" is sufficient at the pleading stage to satisfy the "discharge" requirement of his wrongful discharge claim. Even if that were not the case, this Court has held that "[c]onstructive discharge may occur where 'an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated[.]'" Jones v. United Health Grp., No. JKB-17-3500, 2019 WL 1903668, at *8 (D.Md. Apr. 29, 2019) (quoting EEOC v. MVM, Inc., No. TDC-17-2864,

2018 WL 2197727, at *12 (D.Md. May 14, 2018)), aff'd, 802 F.App'x 780 (4th Cir. 2020).

The statements by Williams' supervisor would certainly suffice under this standard to make

out an allegation of constructive discharge. Moreover, as American Lumpers is the only

Defendant named in this count, Williams has left no ambiguity regarding the subject of his

wrongful discharge claim. The Court therefore finds that Williams' wrongful discharge

claim could survive a motion to dismiss for failure to state a claim.

Under Rule 15(a), "[t]he court should freely give leave [to amend a complaint] when

justice so requires." Fed.R.Civ.P. 15(a)(2). Leave to amend is properly denied when

amendment would prejudice the opposing party, the moving party has exhibited bad faith,

or amendment would be futile. Edell & Assocs., 264 F.3d at 446 (citing Edwards, 178 F.3d

at 242). Defendants have failed to demonstrate that Williams has exhibited bad faith, that

they would be prejudiced by the amendments, or that amendment would be futile. The

Court therefore finds Williams' Motion to Amend should be granted. Accordingly, vacatur

of this Court's Order dismissing this case is warranted, see Katyle, 637 F.3d at 471, and

Williams' Motion to Reconsider will be granted.

## III.    CONCLUSION

For the foregoing reasons, the Court will grant Williams' Motion to Reconsider

(ECF No. 48) and Motion to Amend (ECF No. 50). A separate Order follows.

Entered this 22nd day of October, 2021.

_____/s/_____

George L. Russell, III
United States District Judge
